Filed 1/20/22  P. v. Taylor CA2/1
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B306691 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA214317) |
| v. | |
| JERMAINE TAYLOR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Reversed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

We deem petitioner Jermaine Taylor's petition for writ of habeas corpus to be a petition for resentencing pursuant to Penal Code section 1170.95.[1]  Initially, we affirmed the trial court's order denying the petition to resentence Taylor on two counts of attempted murder.  The Supreme Court ordered us to reconsider in light of the recently enacted Senate Bill No. 775 (2021–2022 Reg. Sess.), which makes defendants convicted of attempted murder eligible for resentencing.  (Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)  We now reverse the trial court's order and remand the case to the trial court to appoint counsel and rule on the petition in light of Senate Bill No. 775.

## BACKGROUND

The following facts from the appellate opinion following the judgment of conviction are undisputed.

### 1.    *People v. Taylor et al.*

Taylor had tattoos suggesting that he was a member of the Crip gang and admitted membership in the Crip gang.  (*People v. Taylor* (Nov. 25, 2002, B152885) [nonpub. opn.] (*Taylor I*).)  The Crip gang was "at war" with the Hollyhood Bloods.  (*Ibid.*)

On October 24, 1998, as Raymond Brown was leaving the house of a Hollyhood Bloods gang member, Taylor and his confederate, Terrell Curry, shot multiple times at Raymond Brown.

Sheriff's Deputies Jacob Sanchez and Jacob Scuoler heard the gunshots and followed Taylor, who was driving Curry in a Buick.  Eventually Taylor spun out of control and turned to face

_____

[1]  Undesignated statutory citations are to the Penal Code.

2

the deputies' patrol car. "The deputies saw two muzzle flashes coming from the Buick as shots were fired at them. Both deputies returned fire. The Buick then began accelerating toward the deputies' patrol car. It passed the car and continued driving away. When it reached the intersection of Myrrh Street and Atlantic Avenue, it spun out of control again and crashed into a pole. When defendant Taylor was unable to drive it any further, he and defendant Curry got out of the Buick and began running down Atlantic Avenue." (*Taylor I, supra,* B152885.) Taylor left an Uzi assault rifle on the Buick's driver's seat.

Deputy sheriffs found seven casings near Brown's neighbor's house, two from an Uzi assault rifle. Investigators found 16 Uzi shell casings in the Buick.

## 2.     *Taylor's conviction*

A jury convicted Taylor of assault with a semiautomatic firearm on Raymond Brown and of two counts of willful, deliberate, and premeditated attempted murder of a peace officer (deputies Jacob Sanchez and Terrence Scuoler). The jury also convicted Taylor of two counts of assault on a peace officer with a semiautomatic firearm. The jury also found Taylor guilty of possession of a firearm by a felon. The jury found true the allegations that Taylor was armed with an Uzi assault rifle and the allegations regarding the gang enhancement. The jury found true the allegation that Taylor personally and intentionally discharged a firearm in the assault. The jury, moreover, found true allegations that Taylor had suffered a prior serious felony conviction and a prior felony conviction for which he served a state prison term. The jury found not true the allegation that Taylor personally used or discharged a firearm in the commission of the attempted murders.

The trial court imposed sentence on October 23, 2002. In this court's opinion modifying and affirming the judgment, this court rejected Taylor's argument that he could not be vicariously liable for attempted premediated murder. We concluded, "[T]he trial court did not err in failing to instruct the jury that defendant personally had to deliberate and premeditate in order to sustain the attempted murder convictions . . . ." (*Taylor I, supra*, B152885.)

### 3.  *Taylor's petition for habeas corpus*

Using a standard form, Taylor filed a petition for writ of habeas corpus on May 21, 2020. Taylor indicated that he was convicted of attempted murder. In his grounds for relief, Taylor stated: "Trial court imposed an illegal sentence and conviction of crime is now illegal." (Some capitalization omitted.) Taylor stated that he was convicted by a jury instructed on the natural and probable consequences doctrine. Taylor cited Senate Bill No. 1437 as authority supporting relief. In an argument section attached to the form habeas petition, Taylor stated: "Recently Senate Bill 1437 was enacted and made changes to the Penal Code which says malice may not [be] imputed to a person solely based on his participation in a crime. [¶] In this instant case clear evidence supports petitioner was the driver of the vehicle where the passenger was the shooter . . . ." (Some capitalization omitted.)

### 4.  *Trial court order*

On June 2, 2020, the trial court denied Taylor's petition for writ of habeas corpus, indicating that an illegal sentence was not imposed. Taylor timed appealed.

4

## DISCUSSION

We deem Taylor's petition for writ of habeas corpus to be a petition for resentencing pursuant to section 1170.95. Taylor's petition relied on Senate Bill No. 1437 which added section 1170.95. Upon remand from the Supreme Court, the Attorney General does not challenge the conclusion that Taylor's petition for writ of habeas corpus should be construed as a section 1170.95 petition.

### A.     Background on Section 1170.95

To be convicted of murder, a jury must ordinarily find that the defendant acted with the requisite mental state, known as " 'malice aforethought.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181, quoting § 187, subd. (a).) Until recently, the felony murder rule provided an exception that made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*Chun*, at p. 1182.) Also, until recently, the natural and probable consequences doctrine permitted a " ' "person who knowingly aids and abets [the] criminal conduct [of another person] is guilty of not only the intended crime . . . but also of any other crime the [other person] actually commits . . . that is a natural and probable consequence of the intended crime." ' [Citation.]" (*People v. Chiu* (2014) 59 Cal.4th 155, 161; see also *People v. Gentile* (2020) 10 Cal.5th 830, 845–846.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.), which became effective January 1, 2019, raised the level of culpability required for murder liability to be imposed under a felony murder or natural and probable consequences theory. (See Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended section 189, which

5

defines the degrees of murder, to limit murder liability based on felony murder or a natural and probable consequences theory for a person who: (1) was the actual killer; (2) though not the actual killer, acted "with the intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder; or (3) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) Senate Bill No. 1437 also amended the definition of malice in section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) In addition to amending sections 188 and 189, the Legislature enacted section 1170.95. (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.) That provision authorizes a person convicted of felony murder or murder under a natural and probable consequences theory to file with the sentencing court a petition to vacate the conviction and be resentenced. (§ 1170.95, subd. (a).)

Under the new version of section 1170.95, subdivision (a)(2), which became effective January 1, 2022, a defendant convicted of attempted murder may be eligible for resentencing relief. Applying this provision to Taylor, Taylor may be eligible for resentencing relief. As the parties agree, the record does not demonstrate his ineligibility as a matter of law. The case therefore must be remanded to the trial court for further proceedings pursuant to section 1170.95. Upon remand, the trial court shall appoint counsel to represent Taylor. (*People v. Lewis* (2021) 11 Cal.5th 952, 967, 970.)

## DISPOSITION

Taylor's petition for writ of habeas corpus is deemed a petition for resentencing pursuant to Penal Code section 1170.95. The order denying the petition is reversed, and the case is remanded to the trial court with directions to appoint counsel to represent Taylor and to conduct proceedings consistent with this opinion.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.